**Valerie-Ann BOLDUC, Administratrix of the Estate of Douglas W. Martin, a/k/a Douglas W. Martin, Jr., Plaintiff**

v.

**COLT'S MANUFACTURING COMPANY, INC., Defendant.**

**Civil Action No. 95–12716–GAO.**

United States District Court,
D. Massachusetts.

June 5, 1997.

William H. Mayer, Hargraves, Karb, Wilcox & Galvani Framingham, MA, for Valerie-Ann Bolduc.

James B. Vogts, James P. Dorr, Wildman, Harrold, Allen & Dixon, Chicago, Il, Richard L. Edwards, Michael D. Urban, Campbell, Campbell & Edwards, Boston, MA, for Colt's Mfg. Co., Inc.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff, Valerie–Ann Bolduc ("Bolduc"), as administratrix of the estate of Douglas W. Martin ("Martin"), filed this product liability suit against the defendant, Colt's Manufacturing Company, Inc. ("Colt's"). The plaintiff alleges that Colt's negligently designed the .380 Colt Mustang pistol which Martin used to accidentally kill himself. Colt's has filed for summary judgment. For the reasons stated below, the defendant's motion is granted.

### I. Background

The facts not subject to genuine dispute are as follows:[1] On November 25, 1992, Martin fatally shot himself in the head with a .380 Colt Mustang pistol designed and manufactured by the defendant.[2] Martin had been drinking beer throughout the day. At around 6:00 p.m., he arrived at the house of Marcel Nadeau ("Nadeau"), the owner of the pistol. He drank another beer with Nadeau, his sixth beer that day.

As he and Nadeau were leaving to buy more beer, Martin noticed the .380 pistol on Nadeau's dining room table. Nadeau picked up the gun and, removing the partially inserted magazine, handed it to Martin. Nadeau turned away from Martin briefly, and when he turned back, he saw Martin holding the gun with his left hand near his head and

[1]. At the summary judgment stage, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36–37 (1st Cir.1995).

[2]. The Mustang pistol is a semi-automatic firearm. It is loaded by inserting the desired number of cartridges in the magazine. The magazine is then inserted into the pistol's handle and

heard the gun discharge. Martin died soon afterward.

### II. Discussion

Summary judgment is appropriate whenever the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir.1995).

Under Massachusetts law, a plaintiff who alleges that a defendant negligently designed a product must prove two elements. First, she must prove that the defendant failed to exercise reasonable care to eliminate avoidable or foreseeable dangers to the user. *Uloth v. City Tank Corp.*, 376 Mass. 874, 384 N.E.2d 1188 (1978). Second, she must show that there is an alternative design available which would reduce the risk of the product without interfering with its function. *Id.* at 881, 384 N.E.2d 1188.

The plaintiff contends that Colt's negligently designed the .380 pistol because the pistol did not have a "magazine disconnect," a feature which would have prevented it from shooting once the magazine was removed. She maintains that neither Martin nor Nadeau knew that even after the magazine had been removed, the gun was still capable of firing a cartridge that had been loaded from the magazine into the firing chamber. Furthermore, she says that the magazine disconnect is a feature that can be readily and inexpensively incorporated into the design of the gun without interfering with its functionality.

clicked into position. In order to ready a cartridge for firing, the pistol's slide must be manually retracted and allowed to snap forward. The manual retraction of the slide cocks the pistol's hammer, and its movement forward uncocks the hammer and strips a cartridge from the top of the inserted magazine into the firing chamber.

To fire the pistol, the user must switch the safety to the fire position, cock the hammer, and pull the trigger.

■ The plaintiff's argument fails. First, Martin's deliberate misuse of the gun is a defense to the plaintiff's claims of negligent design. *Venezia v. Miller Brewing Co.*, 626 F.2d 188, 191 n. 3 (1st Cir.1980) ("[T]he defendants cannot be held liable under a theory of negligent design or manufacture for injuries resulting from the deliberate misuse of their product in a manner so foreign from any proper use contemplated by them that it cannot, even by broad construction, be forced within the critical concept of 'intended' or 'ordinary' use."). A gun, as an obviously dangerous product, is not defective simply because an injury results from its careless misuse. See *Kearney v. Philip Morris, Inc.*, 916 F.Supp. 61 (D.Mass.1996). It is clear from the evidence that Martin misused the pistol. He deliberately pointed the gun at his own head and pulled the trigger.[3] This is a far different case from one where a person is injured by a defective product while using it in a reasonably careful and proper way.

■ Second, the alternative design advocated by the plaintiff (the inclusion of a magazine disconnect) would have substantially interfered with the gun's functionality. *Wasylow v. Glock, Inc.*, No. 94–11073–DPW, slip op. at 16, 1996 WL 911209 (D.Mass. Apr. 4, 1996) (in negligent design case, summary judgment should be granted for gun manufacturer where incorporating magazine disconnect would have affected functional capability of gun). The ability to fire a semiautomatic pistol while in the process of loading or unloading can be critically important in a military, police, or personal defense encounter. In fact, the United States Army as well as the majority of American police departments (including the Boston Police Department, the Framingham Police Department, the Norfolk County Sheriff's Department, and the Suffolk County Sheriff's Department) specifically insist on semi-automatic pistols that do not have magazine disconnects.

■ The plaintiff does not dispute that these law enforcement officials carry semiautomatic pistols without magazine disconnects. However, her expert disputes the usefulness of a single round of ammunition in a defense encounter. The plaintiff also argues that for a typical user of the gun, such as Nadeau, the actual purchaser in this case, the functional advantage of the gun's not having a magazine disconnect is doubtful and presents an issue that should be determined by a jury. But the question whether the design feature has functional utility is not to be answered with reference only to the choices or preferences of particular individual users. If the feature has functional utility to users generally, it cannot be left to a jury to say that because the particular user was not interested in that function the design was defective. See *Wasylow* at 19 n. 18 ("[T]he Supreme Judicial Court of Massachusetts has not 'totally surrendered to the jury the function of all policy-weighing on which the scope and limits of product design liability depend.' ") (quoting *Kearney*, 916 F.Supp. at 70).

In her opposition to summary judgment, the plaintiff also raises an inadequate warnings claim. However, because she failed to raise this claim in either her initial complaint or even in her answers to the defendant's interrogatories, the Court will not consider them here.[4] For these reasons, the defendant's motion for summary judgment is granted.

SO ORDERED.

---

3. The plaintiff appears to have abandoned her earlier claims (as alleged in her complaint) that the gun negligently discharged upon slight pressure on the trigger or that its hammer locked upon loading or removal of a bullet. She has not presented any evidence to support these claims, nor did she raise them as grounds to oppose the defendant's motion for summary judgment.

4. In its Interrogatory No. 9, the defendant asked the plaintiff to "[d]escribe with particularity" her claims of negligent design and manufacture. In her answer, the plaintiff discusses only the mechanical aspects of the gun's functioning and does not allege that the defendant made inadequate warnings.